UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SURFSIDE SOLUTIONS, INC.,<br><br>　　　　　　　　Plaintiff/Counterclaim<br>　　　　　　　　Defendant,<br><br>　　　　　　　　v.<br><br>MNG 2005 INC., d/b/a CBD KRATOM,<br><br>　　　　　　　　Defendant/Counterclaimant. | 25 Civ. 2579 (DEH)<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiff-Counterclaim Defendant Surfside Solutions, Inc. ("Surfside") seeks dismissal of several counterclaims filed by Defendant-Counterclaimant MNG 2005 Inc., d/b/a CBD Kratom ("CBD Kratom"). Surfside brought this action seeking payment for advertising services provided to CBD Kratom over the course of several years. In response, CBD Kratom brought several counterclaims, alleging, *inter alia*, that Surfside breached the contract by manipulating and falsifying customer numbers in order to induce CBD Kratom to continue contracting for Surfside's services. Surfside moves to dismiss these counterclaims under Rule 12(b)(6). ECF No. 18. On review, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

The following facts are taken from CBD Kratom's Counterclaims, the truth of which is assumed. *See* Answer and Counterclaims of CBD Kratom ("Counterclaims") 12-24, ECF No. 13. CBD Kratom is the largest privately-owned retailer of cannabis and kratom products in the United States, with approximately 60 locations nationwide, including stores located in New York, Pennsylvania, Texas, Illinois, and Missouri. *Id.* ¶ 1, at 12. CBD Kratom hired Surfside, a marketing company that claims to help drive online sales and increase in-store foot traffic for sellers of CBD products. *Id.* ¶¶ 2-3, at 12. In October 2022, CBD Kratom entered a contract with

Surfside for these advertising services for a period of six months.  *Id.* ¶ 4, at 12.  The 2022 Contract included a "New Customer Acquisition Campaign" in the cities of Chicago, St. Louis, New York, Philadelphia, Dallas and Houston as well as "Existing Customer Campaign" that would retarget CBD Kratom customers who had not made a purchase in the prior year.  *Id.* ¶¶ 5-6, at 12-13.  CBD Kratom alleges that the 2022 Contract expressly excluded existing customers from the new-customer-focused campaign.  *Id.* ¶ 5, at 12.

Surfside reported metrics to CBD Kratom that measured the success of its marketing campaigns.  *Id.* ¶ 7, at 13.  These metrics included the monetary return on ad spend (the "ROAS," a multiplier-ratio of the money spent by CBD Kratom and the increased revenues obtained as a result) and visitation data showing the foot traffic at CBD Kratom's physical stores attributable to Surfside's campaign.  *Id.*  During the first campaigns, Surfside reported these metrics to CBD Kratom, providing reports of improved foot traffic at CBD Kratom's stores purportedly attributable to Surfside's advertising efforts.  Specifically, Surfside provided reports showing 284 attributed visits in November 2022, 1,319 attributed visits in December 2022, and 1,249 attributed visits within the first 18 days of January 2023.  *Id.* ¶ 8, at 13.  Impressed with these metrics, CBD Kratom significantly increased its monthly ad spend with Surfside, going from an initial $27,000 monthly spend to $95,000 by January 2023.  *Id.* ¶ 9, at 13.

Then, problems began.  CBD Kratom alleges that it began noticing "implausible" data coming from Surfside.  *Id.* ¶ 10, at 13.  For example, Surfside reported 10,000 visitors per day at a Philadelphia storefront—an amount exceeding CBD Kratom's company-wide daily transactions. *Id.*  When CBD Kratom raised the issue, Surfside stated that it was a manual error and promised to correct it.  *Id.*  Roughly ten days later, CBD Kratom again noticed unusually high visitation numbers, this time in the New York City Financial District location.  *Id.* ¶ 11, at 14.  Surfside

responded that the data was accurate and reflected local commuter patterns rather than any error on their part. *Id.*

Separate from foot-traffic inaccuracies, Surfside provided a campaign summary indicating a six-month ROAS of 1.77x, including a 2.55x ROAS in March of 2023. *Id.* ¶ 12, at 14. Believing these numbers, CBD Kratom signed an additional contract dated March 31, 2023. *Id.* Surfside continued to provide data showing higher and higher ROAS values in select markets. For example, on April 19, 2023, Surfside presented a report showing an overall 3.73x ROAS, with ROAS figures of 3.01x for Chicago, 6.14x for New York City, and 5.89x for Philadelphia. *Id.* ¶ 13, at 14. Relying on the veracity of these figures, CBD Kratom reallocated portions of its advertising budget from underperforming markets to those markets that were purportedly delivering stronger results. *Id.*

CBD Kratom continued to question the validity of Surfside's numbers, next in Philadelphia. Surfside reported that, during the week of May 1-7, 2023, 860 customers visited the Center City West storefront. *Id.* ¶ 15, at 14. However, the store itself only recorded 392 transactions. Given that 80-90% of individuals that enter a CBD Kratom store make a purchase, CBD Kratom concluded that Surfside's numbers must be inaccurate. *Id.* Surfside acknowledged the inaccuracy and stated that it would tighten its attribution metrics to better reflect actual traffic into the "center" of each CBD Kratom location. *Id.* ¶ 16, at 15. CBD Kratom alleges that Surfside had never disclosed any limitations to its attribution model prior to May 2023. *Id.*

On June 28, 2023, Surfside provided a report asserting that the overall ROAS was 3.88x. *Id.* ¶ 18, at 15. CBD Kratom alleges that it continued to allocate resources to Surfside's campaigns in belief that this metric reflected an updated and tightened attribution model. *Id.* Through August 2023, Surfside continued to report high ROAS for CBD Kratom's campaigns. *Id.* ¶ 19, at 15. However, CBD Kratom directed an internal analyst to perform an audit of Surfside's numbers. *Id.* Upon learning of the audit, Surfside revised their attributed visit counts down by 80-85%. *Id.*

3

Accordingly, the estimated revenue from Surfside's campaigns dropped by $180,000 for the month of June 2023 and nearly $300,000 for the month of July 2023. *Id.* ¶ 20, at 15. The corresponding ROAS was also revised down initially to 3.08x and eventually to 0.95x, below the contractual minimum threshold. *Id.* ¶ 21, at 16.

In an effort to win back CBD Kratom's business, Surfside offered a three-month trial campaign in June 2024. *Id.* ¶¶ 27, 29, at 17. The initiative required a $20,000 monthly investment from CBD Kratom and had a target ROAS of 3.47x. *Id.* ¶ 26, at 16-17. The contract required Surfside to suppress all customers who had made a purchase in the last year using a list provided by CBD Kratom. *Id.* ¶ 28, at 17. At the end of trial campaign, CBD Kratom audited Surfside's metrics against internal records, revealing that roughly 75% of orders that Surfside had attributed to its work were actually existing customers that should have been excluded. *Id.* ¶¶ 30-31, at 17-18. Consequently, CBD Kratom was not pleased with the results of the trial, and it did not hire Surfside for any further advertising work.

Surfside filed suit in March 2025, seeking to recover payment for the work performed for CBD Kratom. As relevant here, CBD Kratom brought four counterclaims to Surfside's initial suit, including (1) Breach of Contract, (2) Fraudulent Inducement, (3) Negligent Misrepresentation, and (4) Breach of the Implied Covenant of Good Faith and Fair Dealing. Surfside then moved to dismiss the counterclaims. ECF No. 18. The matter was fully briefed as of June 27, 2025.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing the complaint, the court "must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at

4

106-07.  But the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'"  *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## DISCUSSION

Surfside moves to dismiss each of CBD Kratom's four counterclaims for failure to state a claim.  ECF No. 18.  The claims include (1) Breach of Contract, (2) Fraudulent Inducement, (3) Negligent Misrepresentation, and (4) Breach of the Implied Covenant of Good Faith and Fair Dealing.  The Court addresses each claim in turn.

## I.    Breach of Contract

To successfully bring a breach of contract claim, a plaintiff must plead: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract, (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by the defendant's breach."  *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).  The Court concludes that CBD Kratom has adequately alleged each element of this claim.  As described above, CBD Kratom alleges that (1) the parties had three separate contracts in each of 2022, 2023, and 2024, (2) CBD Kratom paid Surfside for their services under each contract, (3) Surfside breached the contract by providing false and misleading performance metrics, either in express violation of the contractual terms or impliedly by contravening the purpose of the agreement in driving advertising revenue, and by including existing customers that the contract stipulated be excluded, and (4) CBD Kratom suffered damages in the amounts spent on Surfside's services and the lost revenue that could have been obtained by spending money on the services of a non-fraudulent marketing firm.  Accordingly, each element is adequately alleged.

Despite CBD Kratom's meeting of these basic elements, Surfside still seeks dismissal.  Surfside first faults CBD Kratom for failing to include the actual contracts as attachments to the

Counterclaims.  However, "'[a] plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim.'"  *James v. Countrywide Fin. Corp.*, 849 F Supp 2d 296, 322 (E.D.N.Y. 2012).  Instead, the complaint must "set forth the terms of the agreement upon which liability is predicated . . . by express reference."  *Howell v. Am. Airlines, Inc.*, No. 05 Civ. 3628, 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006).  While CBD Kratom does not go provision by provision through the contracts, it does allege specific requirements that Surfside failed to meet within each of the agreements, including the failure to accurately track and report metrics used to assess its marketing services and Surfside's targeting of existing customers in its marketing campaigns despite such customers being expressly excluded pursuant to the Contracts. Counterclaims ¶¶ 10, 15, 16, 19, 20, 23, 31-34, 39, 45.  Surfside's cited cases are inapposite.  *See, e.g.*, *James v. Countrywide Fin. Corp.*, 849 F.Supp.2d at 322 (dismissing breach of contract claim where Plaintiff only pleaded that "certain contracts" set forth "the commissions and other elements of compensation to be paid to Plaintiff.").  To the extent Surfside argues that the initial contract lacked a specific ROAS target threshold, it is correct.  However, CBD Kratom does specifically allege that the contract forbade Surfside from including existing customers in all or part of the three campaigns.  Counterclaims ¶ 5, at 12.  Given that the entire purpose of the contract, as alleged, was for the acquisition of new customers, Surfside's repeated breach of this term is by no means immaterial.  *See Catlyn & Derzee, Inc. v. Amedore Land Developers, LLC*, 19 N.Y.S.3d 348, 353 (N.Y. App. Div. 2015) ("A party's obligation to perform under a contract is excused only where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract.").

Even without this express breach, the Court concludes that breach of contract claims survives because CBD Kratom's allegations lay out how Surfside effectively "fail[ed] to provide the services CBD Kratom paid for" entirely, rather than the failure to comply with one small

6

contractual condition.  Def. Br. in Opp. 12, ECF No. 25.  CBD Kratom also alleges, at best, severely inadequate if not outright fraudulent, data reporting on the part of Surfside—not mere "dissatisfaction" as Surfside argues.  Mem. of Law in Supp. 9, ECF No. 18-1.  The Court finds it difficult to conclude that, taking the facts as alleged in the Counterclaims as true, that Surfside's provision of such substandard services and repeated misrepresentation of outcomes does not constitute breach under a reasonable reading of the contract or under the implied covenant of good faith and fair dealing.  *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994) ("Under New York law, the implied covenant of good faith and fair dealing inheres in every contract.").  To the extent Surfside disagrees with CBD Kratom's portrayal of the contractual terms and allegations of breach, that is a question of fact more appropriately addressed after discovery on summary judgment.  *See Harvey v. Centene Mgmt. Co. LLC*, 357 F. Supp. 3d 1073, 1085 (E.D. Wash. 2018) ("At the motion to dismiss stage the Court does not engage in debating the terms of the applicable contract.  Rather, the Court is only concerned with whether the Complaint alleges facts that, if proven, are sufficient to state a claim for relief.").

## II.    Fraudulent Inducement

Surfside seeks to dismiss CBD Kratom's counterclaim for Fraudulent Inducement as (1) duplicative of the breach of contract claim under the economic loss doctrine, and (2) as insufficiently plead under Rule 9(b)'s heightened pleading requirement for fraud claims.

### A.    Economic Loss Doctrine

"Under New York law, '[the elements of fraudulent inducement are a false representation of a material fact and with scienter [and] reliance thereon by defendant to its detriment.'" *Aquino by Convergent Distributors of Texas, LLC v. Alexander Cap., LP*, 642 B.R. 106, 132 (S.D.N.Y. 2022).  "A fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, *i.e.,* when the only fraud alleged is that the defendant was not sincere when it

7

promised to perform under the contract." *First Bank of Ams. v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 20-21 (N.Y. App. Div. 1999). However, when a "plaintiff's fraud claim is premised on allegations that defendants misrepresented various pertinent facts" that led it to agree to the contract, "the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim." *Id.* at 21.

While Surfside may be correct that there was no "duty" to provide accurate metrics in the 2022 contract, based on the allegations in the Counterclaims, the Court concludes that CBD Kratom has adequately stated a claim for fraudulent inducement to enter the 2023 and 2024 contracts. CBD Kratom has pleaded that Surfside misrepresented "various pertinent facts" that induced the subsequent contracts with Surfside. *Id.* at 21. CBD Kratom also specifically alleged the dates and subject matters of communications with Surfside that demonstrated repeated assurances that Surfside's metrics accurately reflected customer visits and ROAS data, when all along Surfside knew this data was wildly overstated. *See* Counterclaims ¶¶ 8-10, 12-13, 19, 23, 49-54, 57-58.

### B.    Rule 9(b)

The Court concludes that CBD Kratom's allegations are satisfactory under the heightened Rule 9(b) standard. "This Court has read Rule 9(b) to require that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Optima Media Grp. Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 142 (S.D.N.Y. 2019). "The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991). Nonetheless, while specificity is required, "a plaintiff need not plead

dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 516 (S.D.N.Y. 2016).

CBD Kratom pleaded specific dates of several communications with Surfside staff regarding inaccurate data reporting over the course of 2022-2024. As CBD Kratom highlights, the Counterclaims identify fraudulent metrics included within reports provided to CBD Kratom relating to marketing efforts in November 2022, December 2022, and January 2023. Counterclaims ¶ 8, at 13. Surfside specifically made allegedly fraudulent representations concerning improved foot traffic and affirmed the accuracy of its data on March 17, 2023. *Id.* ¶ 11, at 14. And on March 30, 2023, Surfside allegedly provided intentionally inaccurate ROAS data, which induced CBD Kratom to enter the 2023 Contract. *Id.* ¶ 12, at 14. Identification of those specific representations is sufficient under governing law. *Universal Surv. Ctr., Inc. v. Precision Opinion, Inc.*, No. 16 Civ. 8259, 2017 WL 11615246, at *2 (S.D.N.Y. June 14, 2017); *see also Iowa Pub. Employee's Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 332 (S.D.N.Y. 2013) ("[C]ourts ... should not demand a level of specificity in fraud pleadings that can only be achieved through discovery.").

## III.    Negligent Misrepresentation

"'Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'" *Childers v New York and Presbyt. Hosp.*, 36 F. Supp. 3d 292, 310 (S.D.N.Y. 2014). In determining whether the nature of the relationship is

9

such that there is justifiable reliance or a special relationship, "a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996). Courts typically grant motions to dismiss where the alleged misrepresentation stems from information that was otherwise accessible to the Plaintiff. *See Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 28 (S.D.N.Y. 2009), *aff'd sub nom. Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.*, 382 F. App'x 107 (2d Cir. 2010) (granting Motion to Dismiss on a negligent misrepresentation claim where third party, not Defendant, provided inaccurate information to Plaintiff and information was accessible to Plaintiff).

The allegations in CBD Kratom's counterclaims are sufficient to survive a Motion to Dismiss. "[T]he standard of a special relationship in the context of a negligent misrepresentation claim is less rigorous than that of a fiduciary duty." *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 311 (S.D.N.Y. 2014). Additionally, the information regarding customer visits and ROAS for CBD Kratom's campaigns was entirely possessed by and controlled by Surfside. Based on the allegations that Surfside knowingly provided false metrics to CBD Kratom, with knowledge that CBD Kratom would rely on those metrics in engaging in future marketing campaigns, to the tune of hundreds of thousands of dollars of advertising spend, the Court concludes that CBD Kratom has adequately stated a claim for negligent misrepresentation.

## IV.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Lastly, Surfside argues that CBD Kratom's claim for the Breach of the Implied Covenant of Good Faith and Fair Dealing is duplicative of the breach of contract claim. "Under New York law, the implied covenant of good faith and fair dealing inheres in every contract." *Travellers*

10

*Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994). "As a general rule, '[t]he cause of action alleging breach of [the implied covenant] is duplicative of a cause of action alleging breach of contract.'" *OHM Remediation Servs. Corp. v. Hughes Env'l Sys., Inc.*, 952 F. Supp. 120, 124 (S.D.N.Y.1997); *see also, e.g., W.S.A., Inc. v. ACA Corp.*, Nos. 94 Civ. 1868, 94 Civ. 1493, 1996 WL 551599, at *9 (S.D.N.Y. Sept. 27, 1996) (noting that "every court" faced with a complaint brought under New York law alleging both breach of contract and breach of the implied covenant has dismissed the latter claim as duplicative), *modified on other grounds on reconsideration,* 1996 WL 735508 (S.D.N.Y. Dec. 20, 1996). However, a claim for breach of this covenant "is not duplicative of a breach of contract claim where the complaint alleges conduct that is separate from the conduct constituting the alleged breach of contract and such conduct deprived the other party of the benefit of its bargain." *AEA Middle Mkt. Debt Funding LLC v Marblegate Asset Mgt., LLC*, 185 N.Y.S.3d 73, 90 (N.Y. App. Div. 2024).

The Court concludes that the claim for breach of the implied covenant is duplicative of the breach of contract claim. The alleged breach of the covenant by Surfside and relief sought are identical to the alleged breach of contract. Because "[CBD Kratom] does not allege that it has suffered damages from [Surfside's] alleged breach of the implied covenant that are distinct from the damages it seeks for breach of the [contract]," CBD Kratom's "breach of the implied covenant claim[] [is] duplicative and must be dismissed." *Page Mill Asset Mgmt. v. Credit Suisse First Bos. Corp.*, No. 98 Civ. 6907, 2000 WL 335557, at *9 (S.D.N.Y. Mar. 30, 2000).

**CONCLUSION**

For the stated reasons, the Court concludes that CBD Kratom's Counterclaims for Breach of Contract, Fraudulent Inducement, and Negligent Misrepresentation survive under Rule 12(b)(6). In contrast, the Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing fails as duplicative. Accordingly, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Counterclaim IV is therefore **DISMISSED**.

Within seven days of this Opinion, the parties shall file a joint letter indicating whether they seek a referral for settlement, either to Magistrate Judge Stein for a settlement conference, or to the District's private mediation program.

The Clerk of Court is respectfully directed to terminate ECF No. 18.

SO ORDERED.

Dated: March 19, 2026

New York, New York

_____

DALE E. HO
United States District Judge

12